**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MIKE MEADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 01-RRA-2756-W |
| | ) | |
| T & WA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is the defendant's motion for summary judgment. The plaintiff is a white man making three race discrimination claims. First, he contends that he should have been promoted to the position of Corporate Quality Director instead of Darryl Keels, a black man; second, that he should have been promoted to Operations Manager instead of Keith Andrews, another black man; and third, that he should have been promoted to Operations Manager after Andrews resigned that position. The plaintiff also makes a common law claim of promissory fraud. The court's decision is based on the parties' written arguments submitted in support of and in opposition to the summary judgment motion and the evidence referenced therein.

### Promissory Fraud

In order to prove promissory fraud a plaintiff must prove that at the time of the alleged representation, the promissory intended to break his promise. The defendant points

out that "Meade conceded at deposition that his only evidence that Sirianno did not intend to increase his salary to $51,000.00 if the Boligee [Alabama] plant obtained QS 9000 certification, as Meade alleges, is the fact that Meade did not receive that raise." *Defendant's Brief* (ct. doc. 40), p. 16. The defendant also points out that the plaintiff's testimony "contradicts his own e-mail wherein he reports to the Human Resources Manager that he has never been told that he was getting an increase or the size of any increase." *Id.* Finally, the plaintiff has abandoned this claim: "The plaintiff is abandoning his claims for discrimination on the basis of the position of Quality Manager (Director) held by Darrell Keels and the claim for misrepresentation. The plaintiff respectfully reserves the right to refer to these claims for background factual information." *Plaintiff's Response to Defendant's Motion for Summary Judgment,* FN 1.

<u>Corporate Quality Director/Darryl Keels</u>

In August, 2000, the plaintiff turned down the position of Corporate Quality Manager because it would have required him to relocate. Keels was then hired for that position on September 11, 2000. The evidence shows that in March of 2001, the position was renamed "Corporate Quality Director." There were no changes in duties, responsibility, or compensation.[1] *Sirianno's Affidavit*, ¶ 16. Clearly, the position of Corporate Quality Director was not open, and therefore the plaintiff has no claim with respect to it. Finally, the plaintiff also expressly abandoned this claim. *Plaintiff's Response to Defendant's Motion for*

---

[1]In the plaintiff's statement of facts (ct. doc. 50), he states that he cannot admit or dispute this evidence.

*Summary Judgment,*  FN 1.

<u>Operations Manager/Keith Andrews</u>

*Evidence*:  On October 16, 2000, the defendant promoted Derek Monk, a white male, to the position of Senior Operations Manager. On that same day, the defendant promoted Keith Andrews from Operations Coordinator to Operations Manager in Training at the Alabama plant.[2] The defendant concedes, for summary judgment purposes, that the plaintiff has made out a *prima facie* case with respect to the Andrews promotion. The defendant, however, contends that it had legitimate, nondiscriminatory reasons for selecting Andrews over the plaintiff.

The defendant had a promotion policy. It stated:

The intention of T&WA is always to attempt to fill open positions by promoting or transferring qualified team members.  Selection for placement in a position is based on skills, experience, job performance and training.

T&WA will conduct an external search for qualified applicants, if there are not suitably qualified internal applicants for a position.

Job opportunities will be posted on the bulletin board for a minimum of three (3) working days to provide all qualified team members the opportunity to apply for the position.  To apply, the team member must complete a self-nomination form and return the form to the supervisor within the designated time frame.  Forms are available from the supervision.

The Operations In Training job was not posted. The defendant contends that it was not posted because no one at the plant was qualified. Tom Sirianno, the person who made the

<hr>

[2]Apparently, at some time the "in training" title was dropped and Andrews became full-fledged manager. That change is not an issue in the case.

promotion decision in question, states why :

> The Operations Manager in Training position was not posted for several reasons. First and foremost, none of the employees at T&WA's Boligee plant met the qualifications for the position. The qualifications are set out in Exhibit "5" to my initial affidavit in support of T&WA's motion for summary judgment. The qualifications include a Bachelor's Degree in Electrical or Mechanical Engineering, ten to fifteen years progressive experience in engineering/development/management positions, including exposure to direct customer contact, budgeting/financial planning, supervisory experience in an industrial (auto industry preferred) environment, work and product flow planning, and exposure to participative style management. Neither Mr. Andrews nor Mr. Meade met those qualifications.

> However, this was a critical time period for T &WA in Alabama. T&WA was in the process of constructing a new plant in Birmingham, Alabama, and relocating its facilities and workforce form Boligee. It was also in the process of starting up production to service the new Honda plant in Lincoln, Alabama. It was my that continuity in the workforce would be important at this time and it wanted to fill the Operations Manager in Training position in house, if at all possible. Even though T&WA did not have an employee that met the qualifications set out in the job description, it was my opinion that Keith Andrews could perform those duties.

*Sirianno's Supplemental Affidavit,* pp. 1-2

Although the plaintiff asked Sirianno for the reasons why he selected Andrews over him, Sirianno did not give him reasons. Sirianno gives several reasons now. He states that the most important consideration was Andrews' and the plaintiff's tenure with the defendant:

> The most important fact was their employment history with T&WA, Inc. Keith Andrews was serving as Operations coordinator at the Boligee plant and had done an excellent job in that capacity. This is a supervisory position dealing with plant production and the management of production line employees. Operations Manager is the next logical step in T&WA's organizational structure. The duties of the two positions are very similar. In fact, the Operations Coordinator provides backup to the Operations Manager when the manager is out of the plant. The responsibilities of the Operations Coordinator include supervising production, administering the document and record program, interaction with customers and suppliers, problem solving, sequencing operations, material handling functions, tracking, troubleshooting and

safety.  As Operations Manager in Training, Keith Andrews would continue those same duties.  He would also be responsible for external affairs, assuring compliance with governmental standards and reporting to the home office.

Mike Meade had no experience in the majority of these areas while employed by T&WA.  He had not supervised or managed any employees with T&WA.  He had no experience with production, logistics, safety or human resources with T&WA.  A move from quality to operations, without having any supervisory experience, or serving as an Operations Coordinator, or being involved in the production process in any way, would have been a complete change of field for Mike Meade.

*Sirianno's Supplemental Affidavit*, p. 2.

Sirianno states that his second reason for his selection of Andrews over the plaintiff was temperament.  Sirianno speaks well of Andrews' temperament, but as to the plaintiff, he states:

Mike Meade, on the other hand, had a very aggressive and confrontational manner. He was a source of conflict and turmoil.  He was frequently involved in disputes with other employees, both in the Boligee plant, other T&WA plants, and the corporate office in Louisville.  He would engage in heated exchanges with other administrators and direct profanity at them during these disputes.  He had a polarizing effect on the workplace.  If he worked solely in quality, and did not have to interact with other employees or administrators, Mike Meade did excellent work.  However, he did not appear capable of interacting with other employees at the local or corporate level.  It was my belief, based on my observation, that as problems arose with employees, customers and suppliers, Keith Andrews would be able to resolve these in a timely and amicable manner, while Mike Meade would exacerbate the problem.

*Id.*

As his third reason, questions about the plaintiff's character were raised when, three months before, it was learned that the plaintiff's ex-girlfriend had threatened to sue him because he supposedly had infected her with a sexually transmitted disease, and that she wanted him fired and to see him dead.  The plaintiff reported that the ex-girlfriend might

come to the plant and cause trouble.  Finally, Sirianno states that he was concerned about the plaintiff's work history.  He had been fired from his previous three jobs, and had periods of unemployment of three months or longer.

The plaintiff's attempts to show that these reasons are pretextual rely mainly on the affidavit of the same Keith Andrews, who was later fired by the defendant. His affidavit extracts some of the exact same wording from Sirianno's affidavit, but does not state that the plaintiff actually supervised or managed as did Andrews:

> Concerning the areas of supervising production, managing employees, administering document and record program, interacting with customers and suppliers, problem solving, sequencing operations, material handling functions, tracking, troubleshooting and safety, Mike Meade *had exposure and worked closely with* production in all aspects of these areas because he was in charge of the QS 9000 initiative.

*Andrews' Supplemental Affidavit*, ¶8 (emphasis added).  Andrews further disputes Sirianno's statement concerning the plaintiff's temperament:

> 10.   I never found Mike Meade to have a polarizing effect on me or other employees. He interacted will with employees, customers, and suppliers.  All managers at T&WA, had disagreements and confrontations because it was a high stress environment.  I had confrontations, Mike Meade had confrontations, Derek Monk had confrontations. Mike Meade had no more confrontations than any other manager and those confrontations were not personal, but ones which were necessary for him to do his job and ensure that other employees were doing their jobs.
>
> 11.   Mike Meade never had any problems raised regarding conflict, turmoil, or demeanor.  Mike never had any reprimands or performance reviews that indicated that he needed to work on these areas.  I was Mike Meade's co-employee and supervisor for a short period and personally observed no behavior on his part that caused problems between employees, supervisors, suppliers, or customers.

*Id.* at ¶¶ 10-11.  Andrews admits that he was the plaintiff's co-employee and supervisor only

-6-

"for a short period." *Id*. at ¶ 11.

In his affidavit, the plaintiff points out that at the time he was hired, Sirianno stated that he was not interested in the plaintiff's work history. The plaintiff also states that his "firings" were in fact layoffs. Further, he has never been reprimanded or disciplined while working for the defendant and received excellent performance reviews. With respect to his ex-girlfriend, the plaintiff states that he did Sirianno that she might tell lies about him, but she never actually caused any trouble at the facility. The plaintiff also points out that Andrews was offered more money to take the Operations Manager's position after he initially declined the job, but the defendant did not offer the plaintiff more money when he turned down the job of Quality Manager.

*Discussion*: The plaintiff complains that the defendant did not follow its promotion procedure. Such failure does not in and of itself establish discrimination.

> Even assuming that USBI did deviate from its policy, this deviation does not raise an inference of discrimination. Standing alone, deviation from a company policy does not demonstrate discriminatory animus. *See EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996) (deviation from company policy not evidence of discrimination, absent a nexus between deviation and employee's protected status); *Friedel v. City of Madison*, 832 F.2d 965, 973 (7th Cir. 1987) (inaccurate application of departmental policy not enough to prove discrimination). *See also Berg v. Florida Dep't of Labor and Employment Security*, 163 F.3d 1251, 1255 (11th Cir. 1998) (plaintiff failed to support claim of ADA violation by arguing that state agency had failed to apply its policies correctly, absent showing that policies were misapplied because of his disability).

*Mitchell v. USBI Co.*, 186 F.3d 1352, 1355-56 (11th Cir. 1999). Deviations from policy do not, however, in and of themselves, establish discriminatory intent, but they may be suggestive of discrimination. *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985).

Sirianno states in his affidavit that the Operations Manager in Training position was not posted because "none of the employees at T&WA's Boligee plant met the qualifications for the position." *Sirianno's Supplemental Affidavit*.  A problem with this explanation is that the promotion procedure states that if there are no qualified internal applicants, the defendant will conduct an external search for qualified applicants. This the defendant did not do. However, the defendant's failure to look outside the plant for applicants obviously did not hurt the plaintiff.

There is also an inconsistency between the defendant's evidence and the effect of its statement to the court that it concedes, for summary judgment purposes, that the plaintiff has established a prima facie case, in that under *McDonnell Douglas* one of the requirements of establishing a *prima facie* case is showing that the plaintiff was qualified to do the job. If there *were* qualified employees inside the plant, the job should have been posted.  Again, however, the plaintiff  was not prejudiced by the fact that the job was not posted, as long as he was considered for the job.

It certainly appears that neither the plaintiff nor Andrews was technically qualified for the Operations Manager job, as, for instance, the written qualifications require a Bachelor's Degree in Electrical or Mechanical Engineering. In any event, the undisputed evidence is that Sirianno's decision was based on the premise that neither man was technically qualified and Sirianno therefore decided which one was better qualified.

In *Lee v. GTE Florida, Inc.*, 226 F.3d 1249 (11th Cir. 2000), the Eleventh Circuit discussed the difficulty of proving discrimination in a promotion decision based on qualifications:

-8-

Other circuits have more clearly articulated the evidentiary burden a plaintiff must meet in order to prove pretext by showing she was substantially more qualified than the person promoted. *See Fulton County*, 207 F.3d at 1340. In *Deines*, for example, the Fifth Circuit affirmed the district court's instruction to the jury stating that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." 164 F.3d at 280. The court explained that the

> "jump off the page and slap [you] in the face" . . . should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. This evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence. Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact.

*Id*. at 280-281.

*Id.* at 1254.

As Sirianno states that the primary reason he selected Andrews over the plaintiff was tenure or experience at Boligee, the plaintiff must show that this reason was pretextual and that the real reason was to discriminate against the white plaintiff.  The plaintiff may do this by presenting evidence that he was clearly more qualified than Andrews or other evidence sufficient to create a fact issue of pretext. The plaintiff asserts that he was not actually considered for the position of Operations Manager In Training. The job was not posted. The plaintiff was not offered the position of Operations Manager in training after Andrews originally turned it down.  Andrews was offered more money to get him to change his mind about not taking the job; when the plaintiff had previously turned down another job he was

-9-

not offered more money to get him to reconsider.  Sirianno did not, when asked, give the plaintiff reasons for selecting Andrews over him. The plaintiff also asserts that the reasons Sirianno has presented to this court have not been totally consistent. The plaintiff also points out the subjective nature of weighing relative qualifications.

The court is of the opinion that the evidence is insufficient to establish a fact question as to whether the plaintiff was clearly more qualified than Andrews, or as to the plaintiff's other evidence of pretext.[3]  Therefore, it is unnecessary to address Sirianno's other reasons for selecting Andrews over the plaintiff.[4]

### Operations Manager Position After Andrews Resigned

Andrews resigned as Operations Manager on March 23, 2001.  The position was posted March 29, 2001.  The plaintiff applied for the position that same day.  The plaintiff, however, resigned and left the company before an Operations Manager was selected. Therefore, being unable to establish that he was rejected for the position, the plaintiff has not made out a *prima facie* case of discrimination.[5]

### Decision

Wherefore, the defendant's motion for summary judgment is due to be granted as to

---

[3]Much of the plaintiff's case depended upon those statements in Andrews' affidavits which have been stricken as inadmissible.

[4]The plaintiff must show that each and every reason given by Sirianno was pretextual. *Combs v. Meadowcraft, Inc.*, 106 F.3d 1519 (11th Cir. 1997).

[5]At the time Meade left, four of the defendant's five plant Operations Managers were white.

all claims.  An appropriate order will be entered.

DONE this day 16th of February, 2005.


ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE